## Lamb v. Broadway-Points, Inc.

*William H. Lamb, William R. Muir* and *Anthony Marris*, for plaintiff.
*Peter J. Savage*, for defendants.

MARRONE, *P.J.*, April 10, 1978—On April 4, 1978, after service of a complaint in equity on defendants, this court held a trial to decide whether to enjoin certain activities being engaged in by defendants as violating or clearly about to violate sections of the Crimes Code of December 6, 1972, P.L. 1482, as amended November 5, 1977, P.L. 221, 18 Pa.C.S.A. §5903.

Having obtained certain books or magazines known as Tasty, Danish Times, Fellatio Films, Liquid Plumber, and Cunnilingus, an action in equity was instituted by the district attorney of this county pursuant to the mandates of 18 Pa.C.S.A. §5903(g). A hearing was scheduled within the three-day period required by the statute after a demand made by the attorney for the Commonwealth.

Only one of defendants served appeared for the trial and he, William Cozan, entered into a consent decree by which the selling, uttering, or showing of the above-named books or magazines were enjoined. The court proceeded to hear testimony as it related to the remaining defendants, none of whom appeared for the trial. At the conclusion of the trial this court entered an order dated April 4, 1978, enjoining all defendants from engaging in any of the activities hereinabove mentioned.

The amended section 5903 of the Crimes Code was enacted by the legislature presumably in an attempt to rectify the constitutional infirmities of prior legislation attempting to limit the dealing in obscene and other sexual materials. Accordingly, the present statute has adopted substantially the requirements of Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed. 2d 419 (1973). In addition, apparently in an attempt to avoid a successful attack on the statute on the grounds that first

amendment rights might be violated as a prior restraint on the freedom of expression, the statute, while defining the offenses in section 5903(a), does not provide for criminal prosecution except for enjoined activities. Thus, prior to the institution of any criminal proceedings, the statute requires an action in equity, wherein the court sitting with or without a jury is to determine the activities to be enjoined. Since, at that trial, the issue is whether or not that person is violating or is clearly about to violate the provisions of section 5903, the statute, in effect, provides for two separate determinations of the obscenity issue before a person may be found guilty and sentenced.

Within the purview of that statute this court held a trial. While the statute gives a defendant the right to a trial by jury, the only defendant present effectively waived that right by entering into a consent decree. The others, having been properly served, chose not to appear and thus the court proceeded to trial without a jury insofar as the injunction proceedings applied to those defendants.

This court has reviewed the material offered and admitted into evidence. The subject matter of each of the publications consisted primarily of graphic illustrations of sexual conduct accompanied by a written accounts of sexual activity and other related matters. Each of the publications contained representations of the type specifically described in section 5903(b) which defines sexual conduct.

The statute imposes a duty on the Commonwealth to "prove the elements of the violation beyond a reasonable doubt." Thus, any decree enjoining violations or threatened violations must be based on the same degree of proof as is required to convict one of a criminal offense.

In this case, the witnesses for the Commonwealth testified that the items produced in court were purchased from William Cozan, at a store operated by the other named defendants. The court had no problem crediting that testimony which met the first requirement for an alleged violation of section 5903.

The Commonwealth then offered in evidence the materials purchased which, the Commonwealth argued, constitute obscene materials as defined in the statute.

To be deemed obscene, materials must be such as:

"(1) the average person applying contemporary community standards would find that the subject matter taken as a whole appeals to the prurient interest; (2) the subject matter depicts or describes in a patently offensive way, sexual conduct of a type described in this section; and (3) the subject matter, taken as a whole, lacks serious literary, artistic, political, educational or scientific value."

Much has been written concerning these required elements. Since the constitutionality of the section has not been raised we need not dwell on that aspect of the standards except to note, as we have above, that the section setting forth those standards is based on language employed in this area by the Supreme Court of the United States.

Had this matter been tried before a jury, the instructions on the first required element in determining whether the publications are obscene would have been substantially that approved by the court in Roth v. United States, 354 U.S. 476, 490 (1957), i.e., "to consider the community as a whole, young and old, educated and uneducated, the reli-

gious and the irreligious—men, women, and children." The court applied that test in reaching its finding that the subject matter of the publications before it, taken as a whole, appealed to the prurient interest.

Having decided that sexual conduct as described in the statute was depicted in the material before it, the court's reason for deeming it patently offensive was because the pictorial representations would affront the contemporary community standards relating to the description of sexual matters.

As to the third required element of obscenity in the statutory definition we need only state that while the illustrations were accompanied by textual materials, a reading of those verbal accounts, taken as a whole, in the opinion of this court, lacked any serious literary, artistic, political, educational or scientific value.

It was for the above reasons that the court entered its order of April 4, 1978.